UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

LAURA JEAN KELSEY,                                          Case No. DG 06-06185
                                                           Hon. Scott W. Dales
            Debtor.
_____/

LAURA J. KELSEY and
JEFF A. MOYER, Chapter 7 Trustee for
Estate of Laura Kelsey,

            Plaintiffs,                                     Adversary Proceeding
                                                           No. 08-80501
v.

SEAN FITZGERALD and MCSHANE &
BOWIE, PLC,

            Defendants.
_____/

OPINION AND ORDER REGARDING SUMMARY JUDGMENT MOTION

            PRESENT:    HONORABLE SCOTT W. DALES
                        United States Bankruptcy Judge

I.      INTRODUCTION

        In this adversary proceeding to recover damages for alleged legal malpractice,

Defendants, Sean Fitzgerald ("Mr. Fitzgerald") and McShane & Bowie, PLC (collectively, the

"Defendants"), filed a motion for summary judgment pursuant to Rule 56 (the "Motion"). They

supported the Motion with affidavits, transcript excerpts, and other documentation that they

contend establishes the absence of any genuine issue of material fact and a right to immediate

judgment in their favor. The Plaintiffs, Laura Kelsey, the Chapter 7 Debtor in this proceeding,

and her Trustee, Jeff A. Moyer, (collectively, the "Plaintiffs"), filed their opposition to the

Motion without affidavits but with other references to the summary judgment record. The Defendants filed a reply. On April 28, 2010, the court heard argument on the Motion in Grand Rapids, Michigan and took the matter under advisement.   Shortly after the hearing, Defendants filed a Motion for Leave to File Supplemental Brief in Support of Defendants' Motion for Summary Judgment (DN 41), which the court granted. The court has reviewed the Defendants' post-argument brief (DN 41-1), and the Plaintiff's [sic] Response to Defendants' Supplemental Brief in Support of Defendants' Motion for Summary Judgment (DN 45). For the following reasons, the court will deny the Motion.

II.   JURISDICTION

The court has jurisdiction over the Debtor's Chapter 7 bankruptcy case pursuant to 28 U.S.C. § 1334(a). That case, and this adversary proceeding, have been referred to the bankruptcy court under 28 U.S.C. § 157(a) and L.Civ.R. 83.2(a) (W.D. Mich.). Although this adversary proceeding is a non-core proceeding, it is related to the Debtor's bankruptcy case, and the parties have consented to the court's entering a final judgment, subject to appellate review. 28 U.S.C. § 157(c)(1).

III.   ANALYSIS

To prevail at trial on this legal malpractice claim, the Plaintiffs must establish (1) the existence of an attorney-client relationship; (2) negligence in the legal representation; (3) negligence as the proximate cause of an injury; and (4) the fact and extent of the injury alleged. *See, e.g., Kloian v. Schwartz*, 725 N.W.2d 671, 677 (Mich. Ct. App. 2006).

Having reviewed the Motion and response papers, and having interrogated counsel at oral argument, it appears the controversy between the parties has a dual aspect. First, Laura Kelsey ("Dr. Kelsey") complains that Mr. Fitzgerald committed legal malpractice in connection with his

supposed representation of her and her estranged husband, Dan Kelsey, in a specific business transaction. Plaintiff claims this resulted in her signing a personal guaranty for the debts of her husband's company. Second, Dr. Kelsey complains of Mr. Fitzgerald's representation of her, or more accurately, his lack of representation, in conjunction with a lawsuit premised upon her personal guarantee.

After the close of discovery, Defendants moved for summary judgment based on affidavits and numerous citations to discovery materials and other parts of the record in this case. They contend that the record warrants dismissal as a matter of law, principally because the Plaintiffs cannot establish an attorney-client relationship. In the absence of such a relationship, the Defendants contend there can be no claim for relief.

Once a motion for summary judgment is made and properly supported, judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994); *Kentucky Division, Horsemen's Benevolent & Protective Ass'n, Inc. v. Turfway Park Racing Ass'n, Inc.*, 20 F.3d 1406, 1411 (6th Cir. 1994). The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* Fed. R. Civ. P. 56(e)). When the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous

allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *see also Michigan Protection and Advocacy Service, Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Summary judgment should be rendered only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *Anderson*, 477 U.S. at 255.  Likewise, summary judgment should be denied if there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Hancock v. Dodson*, 958 F.2d 1367 (6th Cir. 1992).  If the parties present conflicting evidence, a court may not resolve the conflict, for example by making credibility determinations or predictions about success at trial; the court must instead let the matter proceed to a trial on the merits.  Summary judgment is the exception, not the rule.

From the record, it appears Mr. Fitzgerald enjoyed a long-standing attorney-client relationship with Dr. Kelsey and her husband throughout which he represented them in both personal and professional matters.  However, it is unclear from the record at what point the attorney-client relationship terminated and exactly for which transactions Mr. Fitzgerald was formally engaged.  Nonetheless, it appears Mr. Fitzgerald represented Dr. Kelsey and her husband in connection with the formation of her medical practice, as well as with her husband's various business ventures dating back to at least 2003.

In 2004, Mr. Fitzgerald represented KelHartz, LLC,[1] ("KelHartz") during its acquisition of an auto supply company known as Auto Top, Inc.  To facilitate this transaction, the owner and seller, Mr. Kruithof, provided seller-financing and agreed to accept payments from KelHartz

---

[1] KelHartz, LLC is the limited liability company owned by Mr. Kelsey and his business associate, Mr. Hartz.

over time (the "Auto Top Deal").  Sometime after the closing of the Auto Top Deal but before KelHartz had fully paid the purchase price, Dr. Kelsey's husband became concerned that Mr. Kruithof was taking action with respect to Auto Top, Inc. and its employees that undercut the benefits of the Auto Top Deal.  KelHartz and Mr. Kruithof agreed to renegotiate the sale terms.

Mr. Kelsey and Mr. Hartz contacted Mr. Fitzgerald about memorializing the proposed changes that Mr. Kelsey and Mr. Hartz had personally negotiated with Mr. Kruithof.  In November 2004, Mr. Fitzgerald prepared documents[2] that revised certain terms of the sale (the "Amended Auto Top Deal").  These revisions did not include any personal guarantees from Dr. Kelsey to Mr. Kruithof.

After seeking Mr. Fitzgerald's advice in November, 2004, it appears that Mr. Kelsey and Mr. Hartz continued personally negotiating the terms of the Amended Auto Top Deal until February, 2005, when the parties signed the amended transaction documents.  According to Mr. Fitzgerald's affidavit (Exh. 3 to the Motion), however, he had almost no role in bringing about the Amended Auto Top Deal; in fact during the period between Mr. Fitzgerald's cursory document review and the actual closing, several material terms and documents were added to the transaction, including promissory notes and a personal guarantee from Dr. Kelsey.  The record suggests that Mr. Kruithof's attorney, Chuck Ailes, prepared the paperwork memorializing the Amended Auto Top Deal, and Mr. Fitzgerald claims he never saw it.  The only evidence presented in the Motion that would contradict this claim is a billing record prepared by Mr. Fitzgerald for December 27, 2004, (Exhibit C to Mr. Fitzgerald's Affidavit), and Dr. Kelsey's testimony that her husband told her at the closing, before she signed the guarantee, that Mr. Fitzgerald had reviewed and approved the closing documents.  Mr. Fitzgerald's time entry reads as follows:

---

[2] Exhibit A to Mr. Fitzgerald's Affidavit.

> File Review on amendment regarding purchase of Auto Top, Inc.
> and telephone conversation with Dan Kelsey regarding same.

In Mr. Fitzgerald's affidavit and moving papers, he explains that other than preparing a draft promissory note and acquisition agreement regarding the amendments as a "scrivener" and performing a short (18 minute) file review reflected in this time entry, he was not in any way connected with the Amended Auto Top Deal. Indeed, an affidavit from Mr. Kruithof's attorney corroborates Mr. Fitzgerald's position that Mr. Fitzgerald was not involved in negotiating, documenting or otherwise reviewing the Auto Top amendments, including the amendment that called upon Dr. Kelsey to guarantee the KelHartz obligations to Mr. Kruithof (Exh. 8 to the Motion).

Based upon the affidavits of Mr. Fitzgerald and Mr. Ailes, and in the absence of other documentary evidence suggesting Mr. Fitzgerald's involvement in the amendment transaction, the Defendants contend there is no genuine issue of material fact regarding any attorney-client relationship between Mr. Fitzgerald or McShane & Bowie on the one hand, and Dr. Kelsey on the other. Certainly, the existence or not of an attorney-client relationship is ordinarily a question of fact to be resolved at trial. Although the Defendants have advanced a strong showing of Mr. Fitzgerald's non-involvement in the Amended Auto Top Deal, the court's task on a motion for summary judgment is not to forecast the outcome at trial but to identify whether genuine issues of material fact exist and to do so by drawing inferences in favor of the non-moving party.

Given the record evidence of a pervasive and long-standing attorney-client relationship between Mr. Fitzgerald and Dr. Kelsey and her husband, it is reasonable to infer for purposes of this Motion only that Mr. Fitzgerald represented Dr. Kelsey in connection with the transaction that gave rise to her guarantee obligations. For example, the use of the word "amendment" in the

December 27, 2004 time entry, together with the actual amendment documents that gave rise to the guarantee obligation, permits an inference that Mr. Fitzgerald was involved in the transaction on Dr. Kelsey's behalf. Dr. Kelsey testified in pretrial proceedings that she signed the guarantee because her husband told her Mr. Fitzgerald had reviewed it. The court acknowledges that this would be a slim reed upon which to fashion liability,[3] but considering the other evidence in the record, this time entry is more than a "scintilla of evidence" in the Plaintiffs' favor. *Anderson,* 477 U.S. at 252.

Moreover, after the parties documented the Amended Auto Top Deal and when litigation appeared imminent, Mr. Fitzgerald authored correspondence to Mr. Kruithof and his counsel, pursuant to which, among other things, he demanded a release of Dr. Kelsey's guarantee obligations. There does not appear to be any evidence that Dr. Kelsey, at the time of these letters, was aware of the controversy. Mr. Fitzgerald nevertheless advocated for her prior to litigation and filed an answer on behalf of all Defendants, including Dr. Kelsey. The fact that Mr. Fitzgerald appeared to represent Dr. Kelsey's interest in the transaction without any formal request, as far as the present record shows, permits the court to infer that he may have similarly represented her in connection with the transaction giving rise to the guarantee obligation.

The second aspect of Dr. Kelsey's malpractice allegation involves Mr. Fitzgerald's representation of Dr. Kelsey, her husband, and KelHartz in the litigation that Mr. Kruithof initiated to collect on the KelHartz promissory note and on Dr. Kelsey's guarantee (the "Kruithof

---

[3] Although the Defendants urge the court to reject as hearsay Dr. Kelsey's report of her husband's statements at closing, the present form of this evidence does not necessarily preclude the court from considering it on this Motion because "[t]he submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (*citing Celotex Corp.*, 477 U.S. at 324). For example, if Mr. Kelsey testifies at trial that Mr. Fitzgerald reviewed the documents, the statement will not be excludable as hearsay, even if offered to establish the fact asserted, rather than for some other purpose. The possibility that this statement (if made at trial) may contradict Mr. Kelsey's prior sworn statements may go to credibility and weight rather than admissibility -- issues that the court cannot resolve on a summary judgment motion. In any event, the court's decision to deny the Motion does not rest simply on any statements Mr. Kelsey may have made to Dr. Kelsey.

**Page 8 of 10**

Litigation").  The record permits the court to infer that Mr. Fitzgerald's representation of Dr. Kelsey may have fallen below the standard of care applicable to the fiduciary relationship between an attorney and his client.  For example, it appears that Mr. Fitzgerald, although representing KelHartz, the principal obligor, and Dr. Kelsey, the guarantor, communicated almost exclusively with Dr. Kelsey's husband and his business partner rather than directly with her.  To deflect this allegation, the Defendants plausibly assert that Dr. Kelsey was a busy medical professional who preferred to channel communications through her husband whom, at the time, she trusted.  They argue, moreover, that the consequences of her misplaced trust in her husband should not be visited upon Mr. Fitzgerald and McShane & Bowie because she established this protocol.  Even so, the court remains reluctant to find that the Defendants' met their summary judgment burden.  Even recognizing that the state trial court permitted Mr. Fitzgerald to withdraw and allowed Dr. Kelsey to obtain substitute counsel with an adjournment of the trial, Mr. Fitzgerald's sudden and possibly prejudicial withdrawal from representing Dr. Kelsey and her co-defendants in connection with the Kruithof Litigation may be evidence of his failure to communicate with all of his clients.

Specifically, the court is permitted to infer that had Mr. Fitzgerald recognized the distinct differences in the interests between his client who was the principal obligor and his client who was the guarantor, and had Mr. Fitzgerald communicated matters material to his representation of Dr. Kelsey directly to her, Dr. Kelsey may have avoided the liability she suffered through the consent judgment.  The court notes that her bankruptcy discharge does not absolve the Defendants of liability, if any, regarding any causes of action Dr. Kelsey's estate succeeded to under 11 U.S.C. § 541(a), or that Dr. Kelsey asserts in her own right by way of exemption or otherwise.

Although the Defendants' counsel argued that a guarantor has no standing to complain if her principal does not honor the guaranteed obligations, the court finds this argument unpersuasive. Standing alone, the legal proposition is unremarkable, but the fact that the court could find an attorney-client relationship between Mr. Fitzgerald and Dr. Kelsey at the relevant time precludes it from relying on this principle of commercial law because it would not relieve a guarantor's attorney from any duty to his client.

In their post-argument briefing, and to some extent at oral argument in response to questioning from the court, the Defendants asserted a right to summary judgment based on the fact that Defendants have offered no expert testimony and that the time for discovery has passed. Expert testimony is crucial, according to the Defendants, because in a state-court-legal-malpractice case, "expert testimony is *usually* required to establish a standard of conduct, breach of that standard of conduct, and causation." *Law Offices of Lawrence J. Stockler v. Rose*, 436 N.W.2d 70, 87 (Mich. Ct. App. 1989) (emphasis added). The *Rose* court added, however, that a plaintiff can maintain a legal malpractice action without expert testimony where the "absence of care is so manifest that within the common knowledge and experience of ordinary laymen it can be said that the defendant was careless." *Id.* (*citing Joos v. Auto-Owners Ins. Co.,* 288 N.W.2d 443, 445 (Mich. Ct. App. 1979), *leave denied*, 295 N.W.2d 482 (Mich. 1980)).[4] The Defendants' omission of this argument from their moving brief prevented the court and the parties at oral argument from fully considering the nature and quantum of proof necessary to establish the standard of care, whether Mr. Fitzgerald departed from that standard, and the extent to which the departure (if established) injured Dr. Kelsey. Consequently, and for purposes of

---

[4] The general rule favoring expert testimony announced in the *Rose* decision appears to have greater force in a jury trial than a bench trial, and appears to be a procedural guideline rather than a substantive rule of decision. In any event, the Defendants have not equipped the court to make a decision on this point, so the parties and the court may grapple with this question at trial.

ruling on the Motion only, the court is not prepared to say whether expert testimony is necessary *in this case* or not. Whether the Plaintiffs may establish the standard of care without expert testimony, and whether Mr. Fitzgerald's conduct fell short of that standard and injured Dr. Kelsey, remain open for decision after trial.

## IV.    CONCLUSION AND ORDER

Summary judgment is the exception to the general rule favoring trials on the merits. Because the record permits the court to draw inferences in favor of Dr. Kelsey and her estate, and because these inferences create genuine issues of material fact regarding the existence of an attorney-client relationship, Mr. Fitzgerald's possibly negligent representation of Dr. Kelsey, causation, and damages, the court is constrained to deny the Motion.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Motion (DN 32) is DENIED and the trial shall take place as previously scheduled.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Charles S. Rominger, Esq. and Paul A. McCarthy, Esq.

END OF ORDER

**IT IS SO ORDERED.**

Scott W. Dales
United States Bankruptcy Judge

**Dated: May 21, 2010**